IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Dwayne Housey, #328012, | C/A No. 5:16-00019-RMG-KDW |
| Petitioner, | |
| v. | REPORT AND RECOMMENDATION |
| Warden, Lieber Correctional Institution, | |
| Respondent. | |

Petitioner Dwayne Housey ("Petitioner") is a state prisoner who filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) DSC, for a Report and Recommendation on Respondent's Return and Motion for Summary Judgment. ECF Nos. 25, 26. On June 16, 2016, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the Summary Judgment Motion, dismissal procedures, and the possible consequences if he failed to respond adequately to Respondent's Motion. ECF No. 27. On July 7, 2016, Petitioner filed a Response in Opposition to Respondent's Motion for Summary Judgment, ECF No. 29, and on July 18, 2016, Respondent filed a Reply, ECF No. 30. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 26, be granted.

I.      Background

Petitioner is currently incarcerated in the Lieber Correctional Institution ("LCI") of the South Carolina Department of Corrections ("SCDC"). ECF No. 1. In 2007, Petitioner was

indicted at the November term of the York County Grand Jury for trafficking cocaine (2007-GS-46-02626). App. 744-45.[1] John Delgado, Esq., represented Petitioner in a jury trial that convened on April 21, 2008, before the Honorable Lee S. Alford. App. 5-665. After the trial, the jury found Petitioner guilty on the trafficking charge. App. 660. Judge Alford sentenced Petitioner to twenty-five years' imprisonment for the conviction. *Id.* at 664.

On April 25, 2008, trial counsel Delgado filed a Notice of Appeal on Petitioner's behalf. ECF No. 25-4. On November 19, 2008, attorney Delgado wrote a letter to the Court of Appeals explaining that though he had filed a Notice of Appeal on Petitioner's behalf, he did not plan to represent Petitioner in the appeal, and he understood that Petitioner "was planning to hire another attorney to handle his appeal." ECF No. 25-5. On December 3, 2008, Attorney Delgado filed a motion to be relieved as counsel in Petitioner's appeal. ECF No. 25-6. Ultimately, Deputy Chief Appellate Defender Wanda H. Carter represented Petitioner on direct appeal. ECF No. 25-7. In his brief, Petitioner raised and argued the following issue: "The trial judge erred in allowing excessive conspiracy testimony into evidence in support of the trafficking charge because this was prejudicial character evidence which held no probative value." *Id.* at 4. Assistant Attorney General Deborah R.J. Shupe filed the Response Brief on behalf of the State. ECF No. 25-8. On January 25, 2011, the South Carolina Court of Appeals affirmed Petitioner's conviction and sentence in an unpublished opinion, *State v. Housey*, 2011-UP-026. ECF No. 25-9. On February 10, 2011, the court of appeals issued a Remittitur. ECF No. 25-10.

II.     Procedural History

---

[1] Citations to "App." refer to the Appendix for Petitioner's trial transcript and Petitioner's claim for collateral relief in the state courts of South Carolina. That appendix is available at ECF Nos. 25-1 through 25-3 in this habeas matter.

2

Petitioner filed an application for Post-Conviction Relief ("PCR") on April 4, 2011 (2011-CP-46-1261), alleging ineffective assistance of trial counsel and maintaining that trial counsel failed to object to prosecutorial misconduct. App. 666-675 (see page one of Return for date of filing). Specifically, Petitioner alleged, verbatim, that "counsel failed to know the law of the case and make proper objection's to a improper jury argument." App. 667. The State filed a Return to Petitioner's Application on September 14, 2011. App. 675-679. Thereafter, Petitioner filed an Amended Application for PCR on May 3, 2012, alleging, "Ineffective Assistance of Trial Counsel including, but not limited to, failure to call a witness, failure to investigate, failure to object to evidence, failure to move for a mistrial." App. 682. Additionally, Petitioner alleged that "Trial Counsel failed to object to prosecutorial misconduct." *Id.* On May 7, 2012, a PCR hearing convened before the Honorable John C. Hayes, III. App. 686-736. Petitioner was represented by Brian Murphy, Esq., and Assistant Attorney General J. Rutledge Johnson, appeared on behalf of the State. *See id.* Trial Counsel John Delgado, witnesses Cassandra Scott and Detra Wright, and Petitioner testified during the hearing. *See id.* In an Order of Dismissal filed May 10, 2012, the PCR court denied Petitioner's PCR Application in full, making the following findings of fact and conclusions of law:

> In a post-conviction relief proceeding, the Applicant bears the burden of proving the allegations in his Application. Id. Where ineffective assistance of counsel is alleged as a ground for relief, the Applicant must prove that "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 692 (1984); Butler, 334 S.E.2d 813.
>
> The proper measure of performance is whether the attorney provided representation within the range of competence required in criminal cases. The courts presume that counsel rendered professional judgment. Strickland, 80

3

L.Ed.2d 674. The Applicant must overcome this presumption in order to receive relief. Cherry v. State, 300 S.C. 115, 386 S.E.2d 624 (1989).

A two-pronged test is used in evaluating allegations of ineffective assistance of counsel. First, the Applicant must prove that counsel's performance was deficient. Under this prong, attorney performance is measured by its "reasonableness under professional norms." Cherry, 300 S.C. at 117, 386 S.E.2d at 625, citing Strickland. Second, counsel's deficient performance must have prejudiced the Applicant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Cherry, 300 S.C. at 117, 386 S.E.2d at 625.

Applicant called as his first witness his trial counsel, John Delgado (trial counsel). Trial counsel testified the trial of Applicant hinged to a degree on the testimony of his co-defendant, Jemyle Wilson (Wilson). Wilson had been placed on trial at an earlier time, but his trial was mistried. Thereafter, and before Applicant's trial, Wilson pled and agreed to testify against Applicant.

A second adverse issue testified to by trial counsel was a taped telephone call to a confidential informant. The conversation in the taped call was indicative of a drug transaction. Applicant denied the voice was his. However, the voice on the incriminating tape was identified by a witness, Alicia Ellis, to be that of Applicant. (Trial Transcript p. 379, LL 8-9).

The mistrial issue pivots on the testimony of the State's witness, State Law Enforcement Division Agent, Jack Rushing (Rushing). Rushing testified that he recognized Applicant's name in regard to a drug investigation. "Because I . . . actually have friends in law enforcement that knew who Mr. Housey was." (Trial Transcript p. 172, LL 4-11). Immediately following the quoted statement, trial counsel asked to approach the bench, the jury was excused, and the Court held a colloquy with trial counsel and the Solicitor. As a result of said colloquy, and even
though trial counsel thought the testimony was prejudicial and considered asking for a mistrial, he chose not to do so. Trial counsel testified that he determined not to move for a mistrial because to do so in front of the jury, when the trial judge had made it clear such motion would not be granted, would give the offending statement an emphasis which could adversely impact Applicant's case. Additionally, trial counsel testified the Rushing statement was not a high priority issue. Trial counsel also thought a curative instruction by the Court would only emphasize the statement and focus the jury's memory on the testimony. In addition, trial counsel testified it was his desire to focus on the credibility of the State's witnesses, Catherine Goodwin and Alicia Ellis. Trial counsel testified that he felt the credibility issue as to these witnesses was important, and that repeating and clarifying Rushing's statement would not have helped Applicant's defense.

4

Trial counsel testified he did not call any witnesses on Applicant's behalf. Applicant claims two witnesses, Cassandra Scott and Dezra Wright, should have been placed on the stand. Trial counsel testified that, because Applicant was not going to testify, preserving the right to final argument outweighed calling the two witnesses to testify on Applicant's behalf. Additionally, one of the State's witnesses, Alicia Ellis, had an extensive prior record, which opened her up to impeachment. Also, the co-defendant's credibility was challenged by the use of a letter, the plea deal, and prior inconsistent statements.

As to the issue of flight, it appears from the testimony that, after his arrest in Atlanta and while being transported to South Carolina, Applicant explained his leaving South Carolina was because "I did not want to go to jail." Trial counsel testified that he had made a motion in limine to preclude evidence of flight, which the trial judge denied. Trial counsel testified that he also entered a cotemporaneous objection to the evidence of flight but, after a discussion outside the presence of the jury, withdrew the objection. Trial counsel testified that he did not want evidence of a prior conviction to come into the record. At the time of the arrest of Applicant, there was an outstanding warrant for Applicant's arrest for violation of probation. This, according to trial counsel, created a double edged sword. Flight based on the probation warrant could mitigate flight based on the drug charges at issue at trial. However, the fact that Applicant was on probation would establish for the jury that Applicant had a prior record.

Finally, Trial counsel testified the State had significant evidence of Applicant's guilt and wisdom dictated Applicant enter a plea. However, Applicant was adamant that he wanted a trial.

The Applicant called Cassandra Scott (Scott) as a witness. Scott testified she had been a close friend of Applicant for many years. Scott's testimony appears to the Court to be of little value on the issues at trial. Scott simply testified she knew both Wilson and Applicant, that she was with Applicant at the time of Wilson's arrest, that she never saw Applicant deal in drugs, that there was animosity between Wilson and Applicant over a female, that Wilson told her that Applicant was not "involved," and that Wilson was trying to be a big shot by making an ostentatious show of having lots of money even though he had no job. The only possible value flowing from Scott's testimony would be that Wilson told her Applicant was not "involved" and perhaps to establish some motive for Wilson to lie based on the conflict about the female.

Scott also testified the State's witness, Ellis, was a "drama queen" and she had a grudge against Applicant. Of course, Scott's testimony regarding Ellis was influenced by Scott's belief that Ellis had stolen a shirt from her.

5

On cross examination, Scott testified that while she never saw Wilson sell drugs, she saw him with drags and saw him receive telephone calls and then leave and return shortly thereafter. She testified she never saw Applicant with drugs, but did not know if Applicant had made the phone calls produced at trial.

Applicant also called Dezra Wright (Wright) as a witness. Wright testified she knows Applicant and that she was with Wilson on the day he was arrested. She testified that, on that day, she had ridden with Wilson to Columbia, that Wilson did not talk to Applicant by telephone on the trip to Columbia, and that Wilson never mentioned Applicant.

The right to the last closing argument in a criminal case is universally considered to be a significant and powerful tool in a defendants' arsenal. There are legions of cases in which the strategy of preserving the right to the last closing argument is discussed, absent some quirk in the presentation of evidence by Defendant's trial counsel.[1]

The importance of the right to the last argument is bolstered by the legislature's allowing a defendant and his or her counsel to make the closing argument in the penalty phase of capital cases. *See* §16-3-20(B), South Carolina Code of Laws, 1976, as amended. The protection of the right to the last closing argument is a valid trial strategy absent some superseding reason to relinquish the right based on a sufficiently advantageous set of circumstances.

Upon review of the record and the testimony at the Post-Conviction Relief Hearing, I find that counsel has articulated valid reasons for employing the strategies he did at Applicant's trial, specifically the strategy to not pursue a mistrial based on Rushing's testimony as to his knowledge of Applicant, the decision to not call witnesses Scott and Wright, and his decision to withdraw his motion to preclude evidence of Applicant's flight. Stokes v. State, 308 S.C. 546, 419 S.E.2d 778 (S.Ct. 1992); Whitehead v. State, 348 S.C. 467, 560 S.E.2d 401 (S.Ct. 1992).

I have measured counsel's reasons for the strategies employed under an objective standard of reasonableness. Ingle v. State, 348 S.C. 467, 560 S.E.2d 401 (S. Ct. 2002).

In this case, trial counsel adequately considered the pros and cons of each strategic decision and used appropriate description in the strategy decisions he made. (*See* Foye v. State, 335 S.C. 586, 518 S.E.2d 265 (S.Ct. 1999). Trial

---

[1] *See* Smith v. State __ S.E.2d __, 2012 WL 386603 (Ct. App. 2012); counsel lost closing by calling two witnesses, State v. Pinkard, 365 S.C. 541, 617 S.E.2d 397 (Ct. App. 2005); show of defendant's tattoo.

>counsel adequately investigated the case and witnesses through use of a private investigator. I find trial counsel rendered adequate assistance to Applicant and provided representation well within the range of competence required by attorneys in criminal cases. *See* Butler, supra.
>
>I find Applicant has failed to carry his burden of proof and failed to prove that trial counsel's conduct of Applicant's trial, to any degree, undermined the proper functioning of the adversarial process, and I find Applicant's trial and trial counsel's representation of Applicant can be wholly relied upon as having produced a just result. *See* Strickland, supra. Trial counsel's representation and performance clearly provided representation within the range of competence required in criminal cases. Trial counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *See* Strickland, supra.
>
>Applying the standard, of "reasonableness under professional norms," I find trial counsel's performance and representation of Applicant was not deficient to any degree. Cherry, supra. Therefore, Applicant's Application for Post-Conviction Relief is denied and dismissed with prejudice.
>
>This Court hereby advises Applicant that he must file and serve a Petition for Writ of Certiorari within thirty (30) days of the service of this Order to secure appellate review. See Rule 203 and 243, South Carolina Appellate Court Rules (SCACR). The Applicant's attention is directed to Rule 243, SCACR, for the procedures following the filing and service of the Petition.
>
>IT IS SO ORDERED.

App. 736-741. PCR Attorney Murphy filed a Notice of Appeal from the denial of this PCR on Petitioner's behalf. ECF No. 25-11. On January 31, 2013, Appellate Defender Susan B. Hackett filed the Petition for Writ of Certiorari on Petitioner's behalf. ECF No. 25-12. There, Petitioner raised the following issue on appeal: "Trial counsel's failure to present two witnesses to impeach the credibility of the prosecution's primary witnesses and to contradict the prosecution's witnesses' testimony concerning the facts surrounding the alleged drug conspiracy violated Petitioner's Sixth Amendment right to the effective assistance of counsel." *Id.* at 3. The State filed a Return to the Petition for Writ of Certiorari dated March 18, 2013. ECF No. 25-13. The

7

South Carolina Court of Appeals denied the Petition for Writ of Certiorari on November 4, 2014. ECF No. 25-14. The Remittitur was issued on November 20, 2014, and filed in the York County Circuit Court on November 24, 2014. ECF Nos. 25-15 and 25-16. Thereafter, Petitioner submitted his federal habeas petition on January 4, 2016. ECF No. 1.

### III.  Discussion

#### A.  Federal Habeas Issues

Petitioner raises the following issues in his Federal Petition for a Writ of Habeas Corpus, quoted verbatim:

> GROUND ONE: Ineffective assistance of counsel. ECF No. 1 at 5.
>
> GROUND TWO: Prosicution misconduct.
> Supporting Facts: Prosicution was directing the jury and Judg failed to object to misleading. *Id.* at 7.
>
> GROUND THREE: False Indictment.
> Supporting Facts: Indictment does not show exact date of crime but only speculation between general dates. *Id.* at 8.

Additionally, Petitioner attaches additional arguments to his habeas Petitioner. *See* ECF No. 1-1.

#### B.  Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions,

documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

C. Habeas Corpus Statute of Limitations

Because Petitioner filed his Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claim is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). The AEDPA provides that "[a] 1-year period of limitation shall apply to an application for writ of habeas corpus by a person in custody pursuant to the judgment of a State

9

court." 28 U.S.C. § 2244(d)(1). Further, the AEDPA provides that the limitation period shall run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C.A. § 2244(d)(1)(A)-(D). The statute further provides that "[t]he time during which a properly filed application for State post-conviction or collateral relief with respect to the pertinent judgment or claim that is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

   IV.   Analysis

      A. Petitioner's Application Is Time-Barred

Respondent argues that Petitioner's habeas Petition should be dismissed because all of Petitioner's claims are barred by the statute of limitations. ECF No. 25 at 11-13. In response, Petitioner seems to admit that he submitted a late habeas Petition. ECF No. 29. However, Petitioner maintains he has "fully explained to the Courts and has certified that an copy was sent to the Office of the Attorney General the reason for his delay in filing." *Id.* at 5. Additionally, Petitioner represents that he has filed and was granted a Motion for Equitable Tolling and "is requesting that the petition should not be barred and ask for consideration of the application with an evidentiary warranted." *Id.* The undersigned will address timeliness of Petitioner's habeas

petition under the AEDPA in this section and will address equitable tolling in the following section.

As stated above, the AEDPA provides that "[a] 1 year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). The time limit begins to run at the "conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The United States Supreme Court recently interpreted the two prongs of 28 U.S.C. § 2244(d)(1)(A) as follows:

> The text of § 2244(d)(1)(A), which marks finality as of "the conclusion of direct review or the expiration of the time for seeking such review," consists of two prongs. Each prong—the "conclusion of direct review" and the "expiration of the time for seeking such review"—relates to a distinct category of petitioners. For petitioners who pursue direct review all the way to this Court, the judgment becomes final at the "conclusion of direct review"—when this Court affirms a conviction on the merits or denies a petition for certiorari. For all other petitioners, the judgment becomes final at the "expiration of the time for seeking such review"—when the time for pursuing direct review in this Court, or in state court, expires. We thus agree with the Court of Appeals that because [petitioner] did not appeal to the State's highest court, his judgment became final when his time for seeking review with the State's highest court expired.

*Gonzalez v. Thaler*, 132 S. Ct. 641, 653-54 (2012) (clarifying the Court's prior cases concerning 28 U.S.C. § 2244(d)(1)(A)).

A review of the record indicates Petitioner's federal habeas Petition was not timely filed. As previously summarized, Petitioner timely appealed his conviction and sentence. The South Carolina Court of Appeals issued an unpublished opinion, affirming Petitioner's conviction on January 25, 2011, ECF No. 25-9, and issued the Remittitur on February 10, 2011, ECF No. 25-10. To pursue review with the South Carolina Supreme Court by petitioning for a writ of certiorari, Petitioner was required to first petition the Court of Appeals for rehearing. *See* Rule

11

242(c), South Carolina Appellate Court Rules ("SCACR") (providing that a decision of the Court of Appeals "is not final for the purpose of review by the Supreme Court until the petition for rehearing or reinstatement has been acted on by the Court of Appeals."). Because Petitioner did not file a Petition for Rehearing, his conviction became final on February 25, 2011, after the time period for filing a petition for rehearing had expired. *See* Rule 221(b), SCACR (stating that petitions for rehearing must be actually received by the appellate court no later than fifteen (15) days after the filing of the opinion, order, judgment, or decree of the court); 28 U.S.C. § 2244(d)(1)(A).

Petitioner's filing of his PCR Application on April 4, 2011, tolled the one-year limitations period, *see* 28 U.S.C. § 2244(d)(2) ("The time during which a properly filed State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."); and 38 days had elapsed when Petitioner filed his first PCR Application, leaving 327 days within which Petitioner could timely file a federal habeas petition. The statute of limitations remained tolled until November 20, 2014, when the South Carolina Court of Appeals remitted the PCR matter to the lower court or tribunal. *See* ECF No. 26-11; *Frazier v. Stevens*, No. 4:09-302-JFA-TER, 2010 WL 921613, at * 3 n.6 (D.S.C. Mar. 10, 2010), *as amended* (Mar. 12, 2010) (tolling the period of limitations from the date petitioner filed his first PCR until the date the South Carolina Supreme Court issued the Remittitur); *Gambrell v. Bazzle*, No. 9:07-cv-00172-RBH-GCK, 2008 WL 269505, at *5 (D.S.C. Jan. 29, 2008) ("When the Supreme Court issued the Remittitur following its Order denying the petition for a writ of certiorari on December 19, 2003, Petitioner's first PCR action became final.").

Therefore, Petitioner had until October 13, 2015 to timely file his habeas petition.[2] Here, Petitioner did not initiate federal habeas corpus proceedings until December 30, 2015.[3] *See* ECF No. 1-2 (see date stamped "received" for the LCI mailroom); *see Houston v. Lack,* 487 U.S. 266, 270–71 (1988) (stating that a prisoner's pleading is filed at the moment of delivery to prison authorities for forwarding to the district court). Even considering only the time between the remittitur of Petitioner's PCR appeal and the date Petitioner filed his habeas Petition, Petitioner was over a year late in his filing. Therefore, Petitioner's habeas Petition is untimely under 28 U.S.C. § 2244(d) and should be dismissed.

B.  The Statute of Limitations and Equitable Tolling

The AEDPA's statute of limitations is subject to equitable tolling, which could, in effect, extend the final date for filing a habeas petition.  *Harris v. Hutchinson*, 209 F.3d 325 (4th Cir. 2000). The Fourth Circuit has underscored the very limited circumstances in which equitable tolling of the AEDPA's limitations period will be permitted, holding that a habeas petitioner "is only entitled to equitable tolling if he presents (1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time."  *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (en banc).  Thus, rarely will circumstances warrant equitable tolling of the AEDPA limitations period:

---

[2] Even considering the date the Remittitur was filed in the York County Circuit Court, November 24, 2014, the latest Petitioner should have filed his habeas petitioner was October 19, 2015 (noting that October 17, 2015, was a Saturday). *See* ECF No. 25-16.

[3] Here, the 38 days of untolled time between Petitioner's direct appeal remittitur and the commencement of his PCR action, together with the 405 days that elapsed between Petitioner's PCR appeal remittitur and the commencement of his federal habeas action totals 443 days. Therefore, Petitioner filed his habeas petition 78 days late (443 (the amount of untolled time)-365 (one-year limitations period)).

13

> [A]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes. To apply equity generously would loose the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions of fair accommodation. We believe, therefore, that any resort to equity must be reserved for those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result.

*Harris*, 209 F.3d at 330. The respondent bears the burden of asserting the AEDPA's statute of limitations, *Hill v. Braxton*, 277 F.3d 701, 705-06 (4th Cir. 2002); the petitioner then bears the burden of establishing that his petition is timely or that he is entitled to the benefit of the equitable-tolling doctrine, *Rouse*, 339 F.3d at 246.

In 2010, the United States Supreme Court considered the issue and also held that § 2244 "is subject to equitable tolling in appropriate cases." *Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010); *cf. Pace v. DiGuglielmo*, 544 U.S. 408, 418 n.8 (2005) (noting Court assumed without deciding that AEDPA's statute of limitations could be equitably tolled for purposes of that decision because respondent assumed it did). The *Holland* Court reiterated its prior holding in *Pace* that the statute would be equitably tolled "only if [the petitioner] shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland*, 130 S. Ct. at 2562 (quoting *Pace*, 544 U.S. at 418)).

Petitioner maintains that he has explained his delay in filing to the Courts, has filed a motion for equitable tolling, and was granted a motion for equitable tolling. *See* ECF No. 29 at 5. In review of the docketed materials, the undersigned notes that on April 15, 2016, in response to the court's proper form order, ECF No. 14, Petitioner filed a Reply captioned as "Petitioner's Verified Affidavit in Support of Equitable Tolling," ECF No. 17. Petitioner did not file a motion

14

for equitable tolling, and the court has not granted any such motion. In his affidavit, Petitioner maintains that his legal materials were confiscated when he was placed in the lock-up portion of the facility where he was being housed in November of 2015. ECF No. 17 at 3. Petitioner argues that if his "custodians had complied with his requests to relinquish the sought out legal materials pertaining to his case, then Petitioner could have timely filed the habeas corpus petition. . . ." *Id.* at 4. Additionally, Petitioner represents that "[d]uring the months that passed between August 2015 and November 2015, Petitioner faced many obstacles that were not a product of his own demise, and was made to suffer a total shut down of is his accessibility to the Law Library services." *Id.* at 6.

The undersigned finds that Petitioner has not presented evidence of an extraordinary circumstance that was beyond his control that prevented him from filing a timely habeas petition. Therefore, Petitioner has failed to satisfy his burden of demonstrating entitlement to equitable tolling. Moreover, Petitioner only indicates that he suffered obstacles for roughly a four-month period of time. Petitioner offers no excuse for the months prior to August 2015 when he could have timely filed his Petition. Additionally, Petitioner should have had access to the law library several times during this four-month span of time. Though Petitioner offers some evidence that his unit was placed on lock-down, he does not offer any evidence indicating that he was denied access to the law library or was otherwise prevented from making a filing with the district court. The undersigned finds that Petitioner has failed to meet his burden of proving either that he is actually innocent (which is not argued in this instance) or an extraordinary circumstance prevented him from timely filing a Petition for habeas review. *See Holland*, 560 U.S. at 649 (requiring a petitioner must have "been pursuing his rights diligently, and. . . some

extraordinary circumstance stood in his way" to prevent timely filing). Therefore, Petitioner has failed to satisfy his burden of demonstrating entitlement to equitable tolling. Accordingly, equitable tolling of the statute of limitations is not merited. Based upon the foregoing, the Petition was not timely filed, and it is barred by Section 2244(d)(1).[4]

V.     Conclusion and Recommendation

Therefore, based upon the foregoing, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 26, be GRANTED and the Petition be DENIED.

IT IS SO RECOMMENDED.

August 23, 2016                                         Kaymani D. West
Florence, South Carolina                         United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

---

[4] Because the court finds that the statute of limitations bars Petitioner's § 2254 Petition, it is precluded from addressing the merits of his claims. *See Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995) (finding that once a claim is determined to be procedurally barred, the court should not consider the issue on its merits).